## Stern's Estate

Before Lamorelle, P. J., and Gest, Henderson, Van Dusen, Stearne and Sinkler, JJ.

The facts appear from the following extract from the adjudication of

VAN DUSEN, J., Auditing Judge.—Harry L. Stern died July 27, 1932, leaving a will dated April 26, 1923, whereby he gave $2,500 and his personal effects to his wife, Emma L. Stern, $1,000 to his trustees for the maintenance of his burial lot, certain legacies to charitable institutions as hereinafter recited, and the residue of his estate to his trustees in trust to collect the income and remit each month the sum of $50 to his sister, Ida Stern, and to pay the balance of the income to his wife, Emma L. Stern, for and during the term of her natural life, and, should the balance of the income be less than $7,000 in any year, to pay her a sufficient amount out of principal to make up the deficit; and upon her death, subject to the annuity to his sister, he gave the principal of his estate one half to such of his brothers and sisters as should then be living, and to the issue of such as should be deceased, per stirpes, and one half to be retained by his surviving trustee in perpetual trust for the charitable organizations therein set forth.

By election dated May 17, 1933, and now lodged for record, Emma L. Stern, widow, has elected to take under the will.

A question arises under item 5 of the will, wherein the testator provided as follows:

"5. In case my estate, exclusive of all real estate, shall, at the time of my death have a clear value of $125,000, after the payment of my just debts, then and in that case only I give and bequeath the four following specific money bequests absolutely:

"a. To the Reformed Congregation of Keneseth Israel of Philadelphia, $1,000.

"b. To the Jewish Hospital Association of Philadelphia, $2,000.

"c. To the Jewish Foster Home and Orphan Asylum Incorporated of the City of Philadelphia, $1,000.

"d. To the National Farm School Incorporated now located at Doylestown, Pennsylvania, $1,000."

The value of the personal estate at the time of the testator's death, as appears by the inventory and appraisement, was $119,693.22, and this has been reduced by the payment of debts and expenses of administration to $114,819.55, the balance shown by the account.

The four legacies for charitable purposes, aggregating $5,000, were conditioned upon the clear value of the estate, exclusive of real estate, being $125,000 at the time of the testator's death.

Two of these legatees, the National Farm School and the Jewish Hospital Association of Philadelphia, contend that the value placed by the appraisers on 1,187 shares of Sibson and Stern, Inc., and 640 shares of Germantown Braid Company, was too low, and that a proper appraisement thereof would increase the net value of the estate to at least $125,000, in which event the legacies to charity would be payable.

Sibson and Stern, Inc., and Germantown Braid Company are both close corporations, the stock of which is owned entirely by members of two families and a few employes. They are engaged in the same general type of textile manufacture on the same premises, the Braid Company occupying on lease certain space in the building owned by Sibson and Stern, Inc. There is no market for the stock of either company.

The capital of Sibson and Stern, Inc., is made up of 3,305 shares of no par value. The following is a statement of the company as of July 29, 1932:

Current assets:

| | | |
|---|---|---|
| Cash and United States treasury certificates... | $46,063.04 | |
| Accounts receivable | 2,354.36 | |
| Inventory | 19,642.64 | |
| | | $68,060.04 |

Fixed assets:

| | | |
|---|---|---|
| Machinery $54,186.58, less reserve for depreciation $52,159.13—net | 2,027.45 | |
| Real estate (assessed for tax purposes at $53,700) | 72,986.79 | |
| Other assets | 11,023.58 | |
| | | 86,037.82 |

| | | |
|---|---|---|
| Total assets | | $154,097.86 |
| Current liabilities, accounts payable | | 334.23 |
| Net | | $153,763.63 |

The book value of 3,305 shares, figured in current assets, and allowing a liberal discount for the items of accounts receivable and inventory, was $17 per

share. Figured in both current and fixed assets, the book value was more than $40 per share.

The appraisers valued the testator's 1,187 shares at $20 per share.

As to the Germantown Braid Company, its capital is 2,640 shares of $25 par value.

Current assets:

| | | |
|---|---:|---:|
| Cash and United States treasury certificates... | $13,707.51 | |
| Accounts receivable | 1,869.21 | |
| Inventory | 9,447.85 | |
| | | $25,024.57 |
| Fixed assets: | | |
| Machinery $54,788.40, less reserve for depreciation $54,788.40 | | 0.00 |
| Other assets | | 804.12 |
| Total assets | | $25,828.69 |
| Current liabilities, accounts payable | | 686.28 |
| Net | | $25,142.41 |

The book value of 2,640 shares was $9 per share.

The appraisers valued the testator's 640 shares at $5 per share. The exceptants contend the value should be at least $8 per share.

The machinery of each company has been written off by 20 or 30 years of depreciation to what is now "junk" value, and it was testified that its value in liquidation would be no more than this.

Sibson and Stern, Inc., showed a profit in 1 year: 1928 loss, $6,641.61; 1929 loss, $7,749.39; 1930 loss, $9,361.34; 1931 gain, $2,642.91; 1932 loss, $6,647.60.

Germantown Braid Company was conducted at a loss in the 5 years before and including that of testator's death: 1928 loss, $7,576.92; 1929 loss, $9,077.66; 1930 loss, $16,248.92; 1931 loss, $4,069.64; 1932 loss, $6,230.33.

On January 24, 1933, Sibson and Stern, Inc., in partial liquidation of the corporation, redeemed certain of its shares and distributed some $6,000 to its stockholders at the then book value of $41.41 per share. It was explained that at this time the corporation had something over $45,000 in cash, and as business was poor and they were running at a reduced capacity it did not seem necessary to keep such a considerable balance of cash; certain of the stockholders wanted cash, and this method of distribution was adopted.

The purpose of the testator in making bequests to charity conditioned upon the value of the estate, was obviously for the protection of the widow and other legatees. He assured her $7,000 a year out of income and principal if necessary, and this sum, together with the $600 a year given to his sister, will not be produced by the income of a $125,000 estate. A substantial sum must be taken from the principal of the estate.

If the value of the estate is less than $125,000, it should be preserved for the purposes of the will.

The four charities whose legacies are thus conditioned are also beneficiaries, with three other institutions, of a part of the income of the estate at the death of the widow.

The net estate as shown by the account is $114,819.55, and the value of the stocks in question would have to be increased $10,000 to make the estate worth $125,000.

The stocks are closely held, and there is no evidence of sales at any price.

Both businesses have been conducted at a loss in the past 5 years, other than Sibson and Stern, Inc., which shows a profit in 1 exceptional year.

Book value alone remains as a basis of calculation, and that is affected by the absence of earning power by the corporations and by the fact that we are dealing with minority stock.

If the question at issue were the liquidation value of the entire corporation, the value set by the appraisers would probably be inadequate. We are concerned, however, but with a minority interest. The control of the corporation remains with the majority; a liquidation cannot be demanded, and book values must be discounted accordingly. Minority stock does not interest an outside purchaser, and it may be doubted that the majority stockholders were willing to pay book value for additional stock, viewing the losses suffered by the corporations in 5 years past and depressed business conditions as they were in July 1932.

A distinction between the value of majority and minority stocks was made in Fidelity-Philadelphia Trust Co. et al. v. Simpson, 293 Pa. 577. There the plaintiff had lost control of a corporation by the fraud of the defendant, and damages were measured by the difference between these two values. The stock had a book value of $173 and a liquidation value of $100. Stock which carried the control of the corporation was found to be worth $135, and after the control was lost it was valued at $110.

Viewing all the circumstances of the testator's holdings, I am unwilling to find that the appraisement made was inadequate. The facts do not justify an increase of $10,000 in the appraisement made in order to bring the estate to the value of $125,000. If there is a doubt, it should be resolved in favor of the testator's widow and relatives, for whose protection this provision was made.

Listed stocks, at the time of testator's death, were selling at but a fraction of their book value.

Neither of these corporations had earning power. They were operating at but a small part of their capacity. There have been losses for 5 years, and the future promised more losses. A complete shutdown was discussed, but dismissed because the expense of watchman and heat to keep fire insurance in force, together with real estate taxes, etc., was too great to warrant it.

I find that the estate, exclusive of real estate, did not at the time of testator's death have a clear value of $125,000, and that these four legacies to charity are of no effect. . . .

*Adolph Eichholz, George B. Clothier, Leon J. Obermayer,* and *Edmonds, Obermayer & Rebmann,* for exceptants.

*Clarence E. Hall,* contra.

HENDERSON, J., November 24, 1933.—Two charities, exceptants, were bequeathed legacies of $1,000 and $2,000 respectively, provided "my estate, exclusive of all real estate, shall, at the time of my death have a clear value of $125,000, after the payment of my just debts, then and in that case only I give and bequeath the four following specific money bequests absolutely. . . ."

The will was executed in 1923, and the testator died in 1932.

The auditing judge found that the estate was not of a clear value of $125,000 and hence these legacies are inoperative.

Objection was made to the appraisement of the testator's shares of stock, minority holdings, in two corporations whose stock is closely held. The accountants offered considerable testimony in support of the appraisements, all uncontradicted; none at all was proffered by the exceptants.

The brief for the exceptants states the questions involved as follows:

1. Can corporate stock for which there is no actual market be properly valued at less than its proportionate part of the net liquidation value of the corporate assets? (Affirmed by the auditing judge)

2. Was the stock of the decedent in Sibson and Stern, Inc., and in Germantown Braid Company appraised at an adequate figure in determining whether the clear value of the estate equalled $125,000, so as to enable the exceptants to claim their legacies under clause 5 of the will? (Affirmed by the auditing judge)

The will directs these legacies to be paid if the estate has a "clear value of $125,000". The brief discusses many kinds and measures of value: Fair market value, actual value, reliable market value, clear market value, true value, book value, full book value, appraised value, actual value, conservative computed book value, etc.

The testator had none of these in mind. He provided his estate must have a "clear value of $125,000" or these legacies were inoperative. "Clear" has a meaning which is not dubious. The Oxford Dictionary defines it as "manifest", "plain", "evident", "unclouded"; and of persons as "subjectively free from doubt", free from pecuniary complications.

We might add that the testator meant his estate was to be $125,000 "beyond peradventure", and this view disposes of the argument that the administration expenses and inheritance and estate taxes should not be deducted in arriving at the clear value.

The will provides that taxes shall be payable out of the residuary estate, hence in provisions for legacies he was dealing with the clear value of his net estate.

The auditing judge has found as a fact that the estate was not of "a clear value of $125,000", and in this we find no error.

In Schmitt's Estate, 21 Dist. R. 353, 354, we said:

"Findings of fact by an auditing judge, like the verdict of a jury, will not be disturbed unless clear error be shown (Kelly's Estate, 12 Dist.R.718), and if there be sufficient evidence such findings will stand, even though another judge might have reached another and a different conclusion: Royer's Estate, 217 Pa.626. To justify a reversal there must be manifest error (Boyd's Estate, 17 Dist.R.393; Pollard's Estate, 18 Dist.R.636), or the inferences and conclusions unwarranted: Cake's Appeal, 110 Pa.65."

The exceptions are dismissed and the adjudication is confirmed absolutely.